APPEAL OF JOHN A. HOHMAN.

[SPRECHER ET AL. v. SINGLE.]

FROM THE DECREE OF THE COURT OF COMMON PLEAS OF
LANCASTER COUNTY.

Argued May 21, 1889—Decided June 7, 1889.

1. Where the sheriff's vendee of real estate against which there was a subsisting mortgage, assumed the mortgage debt after the sale by giving his own mortgage for its amount, whereupon the original mortgage was satisfied, the transaction on its face is confirmatory of other evidence sustaining the contention of claimants upon the fund, that the property was sold subject to the original mortgage.
2. Upon the petition of the committee of an habitual drunkard, exhibiting an itemized account of his costs and praying that the court approve and order the payment of the same, a decree was made and entered upon the judgment docket that the estate of the drunkard pay said costs: such order was in the nature of a final decree in equity for the payment of money, and had all the effect of a lien from its entry in the judgment docket.

Before STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 111 July Term 1888, Sup. Ct.; court below, Vend. Exp., No. 14 November Term 1886, C. P.

On October 16, 1886, certain real estate of Simon Single was sold at sheriff's sale to John A. Hohman, the net proceeds amounting to $465.29. This sum being paid into court, *Mr. Daniel G. Baker* was appointed auditor to report a distribution thereof.

The facts as found by the auditor were in substance that in 1882 Simon Single was the owner of a parcel of real estate in the city of Lancaster, on which were erected a two story brick dwelling house and out buildings. The property was covered as a whole by a mortgage executed by Single to the trustees of the Orphans' Asylum of Lancaster, for $2,800, dated and recorded March 31, 1882. The erection of two new buildings upon the rear of the lot had been begun about March 1, 1882.

VOL. CXXVII—14

On October 9, 1882, an inquisition finding that Single was an habitual drunkard was returned, filed, and confirmed nisi; and subsequently one Frank Pfeiffer was appointed and duly qualified as his committee. On June 16, 1884, an order of sale of Single's real estate was granted by the Court of Common Pleas. The property being returned unsold, an alias order was granted and a sale fixed for December 1, 1884. On that day, Single, who had been absent in Illinois during and after the inquest, filed a traverse to the inquisition. Thereupon the sale of the real estate was stayed, and on April 26, 1886, a jury was called and a verdict taken that Single was not an habitual drunkard, and the inquisition was thereupon reversed. On February 17, 1886, Pfeiffer, the committee, presented his petition setting forth his appointment as committee, that he would not contest the traverse pending, being then satisfied that Single was not an habitual drunkard, and exhibiting an itemized account of the actual costs which had been incurred by him under his appointment. On this petition a rule was granted, which on April 17, 1886, was made absolute, and a decree made that the sum of $225.62 be paid by the estate of Simon Single to Frank Pfeiffer, committee, on account of said costs. This decree was entered in the judgment docket, as follows: "Simon Single's estate. Frank Pfeiffer, et al. April 22, 1886. $225.62. Trust Book No. 9, page 269."

On June 11, 1886, on petition and motion of Frank Pfeiffer, a rule was granted upon Single to show cause why an execution should not issue to collect the amount so ordered to be paid, to wit: $225.62. On the same day, a rule was granted upon Pfeiffer to show cause why the entry in the judgment index referred to should not be stricken off. After argument, the court, on August 14, 1886, entered a decree making the first rule absolute and awarding execution against Single for $225.62, with interest from April 17, 1886. The rule relating to the entry in the judgment index was discharged.

Upon the execution thus awarded, as well as upon the writ indicated in the caption, issued upon a judgment in favor of Sprecher & Pfeiffer, the real estate of the defendant was sold to John A. Hohman, for $575. There was evidence that at the day of sale, George M. Franklin, one of the trustees of the Orphans' Asylum, gave notice that the property would be sold

subject to the Orphans' Asylum mortgage. John A. Hohman, the sheriff's vendee, was present when the notice was given, and on November 10, 1887, he executed and delivered to the Orphans' Asylum his own mortgage for the amount due upon the Single mortgage, and on the margin of the record of the latter mortgage an entry was made as follows: "November 10, 1887, this mortgage is paid, satisfied and released. [Signed] George M. Franklin, Treas. of O. A. [Seal.] "

Against the funds for distribution, the following claims were made:

1. A mechanics' lien against the new houses erected upon the rear of the lot, for $30.22; filed about March 1, 1882.

2. The mortgage of the whole property to the trustees of the Orphans' Asylum, for $2,800; recorded March 31, 1882.

3. Pfeiffer's costs, $225.62, ordered to be paid by the decree of April 17, 1886.

4. A judgment for $1,000 against Single, in favor of John A. Hohman, entered May 11, 1886.

Upon the evidence before him, the auditor found that the real estate was sold by the sheriff, by express agreement of the mortgagee, subject to the mortgage in favor of the Orphans' Asylum, and awarded the fund, after an ascertainment of the curtilage, 1. To the mechanics' lien; 2. To the decree in favor of Frank Pfeiffer, for costs; and 3. The balance to John A. Hohman's judgment.

To this report of the auditor, John A. Hohman filed exceptions, alleging that the auditor erred:

1. In finding that the real estate was sold subject to the mortgage of the Orphans' Asylum.[1]

2. In not finding that the lien of the mortgage of the Orphans' Asylum was discharged by the sheriff's sale as to the new dwellings subject to the mechanics' lien.[2]

3. In awarding to Frank Pfeiffer the costs of inquisition per decree of April 17, 1886, $225.62; said decree not having the force and effect of a lien.[3]

4. In awarding interest on said costs from April 17, 1886.[4]

5. In not awarding the fund, 1. To the mechanics' lien; 2. To the mortgage; and 3. To the judgment of John A. Hohman.[5]

These exceptions were dismissed by the court, PATTER-

SON, J., and the distribution reported by the auditor confirmed, whereupon the exceptant took this appeal, specifying that the court erred:

1–5. In overruling said several exceptions.[1 to 5]

*Mr. C. I. Landis* and *Mr. D. G. Eshleman*, for the appellant.

*Mr. B. C. Kready* and *Mr. A. J. Eberly*, for the appellee.

OPINION, MR. JUSTICE STERRETT:

The subject of complaint in the first and second specifications is the finding of fact that the real estate of Simon Single, the proceeds of which is the fund for distribution, was sold subject to the $2,800 mortgage in favor of the Orphans' Asylum.

It is a mistake to suppose there was no evidence before the auditor to justify him in finding that fact. In addition to other testimony tending to prove that the property was sold subject to the mortgage, it was clearly shown that shortly after the sale, appellant, who was the sheriff's vendee, assumed the mortgage debt by giving his own mortgage for same amount, and thereupon the original mortgage was marked "paid and satisfied" by the mortgagee, on the record thereof. That transaction, on its face, is wholly inconsistent with his present contention that the property was sold clear of the mortgage. If it was so sold, why did he assume the payment of the mortgage debt, as the evidence shows he did? In view of all the evidence as to what occurred at the time of sale, as well as afterwards, there was no error in finding as complained of. The first and second specifications are therefore dismissed without further notice.

The third and fifth specifications relate to the costs of inquisition, etc., $225.62, which the Court of Common Pleas, by its decree of April 17, 1886, ordered to be paid by the estate of said Simon Single.

The proceedings, which led to the making of that order or decree, were substantially as follows: In 1882, Simon Single, by inquisition duly taken, was found to be an habitual drunkard. Francis Pfeiffer, the appellee, was appointed committee of his person and estate and gave bond with sureties in $15,800. In June, 1884, the court ordered a sale of the habitual drunkard's real estate, to which the committee made return, in November

following, that the property remained unsold for want of bidders. An alias order was thereupon issued to sell on December 1, 1884, at seven o'clock P. M. On that day, before the hour of sale, a traverse of the inquisition was filed on behalf of the alleged habitual drunkard, and subsequently an order was made, staying the sale until the traverse was disposed of. That was done on April 26, 1886, by the verdict of a jury finding that the traversor "is not an habitual drunkard." In the meantime Pfeiffer, the committee, having become satisfied that the traversor was capable of managing his own estate, determined not to resist the traverse and ceased to act as committee. He accordingly presented to the court an itemized account of costs and expenses incurred by him as committee, etc., and asked the court to approve the same and order payment thereof out of the estate of said Simon Single. The result was the decree of April 17, 1886, above mentioned, which on April 22, 1886, was entered on the judgment docket. Afterwards the court awarded execution thereon, by virtue of which the real estate of Simon Single was levied on and sold. The proceeds of that sale constitute the fund for distribution.

The presentation of the committee's account and the action of the court thereon were manifestly intended as a final settlement; and the decree ordering payment of the balance due him is in the nature of a final decree in equity for the payment of money. It had all the effect of a lien from the date of entry in the judgment docket. In Vincent v. Watson, 40 Pa. 306, it was held that the balance due a committee of an habitual drunkard, as per his account filed and confirmed by the Court of Common Pleas, becomes a debt of record, the settlement of the account being in the nature of a decree in chancery. Our act of March 29, 1859, P. L. 289, provides that decrees for the payment of money shall be a lien on the real estate of the defendants or debtors named in the decree, in like manner and with the same force and effect as the lien of judgments rendered by common law courts, and shall be entered in like manner in the judgment docket of the proper county.

The order in question, being clearly in the nature of a decree in equity, and having been entered in the judgment docket, became a lien, from that date, entitled to participate in the distribution in its proper order. It was never reversed or modified.

When the court ordered execution to issue thereon, a writ of error to the execution was taken, but that appears to have been non-prossed in this court. As a decree, having the force and effect of a judgment duly entered in the judgment docket, it remained undisturbed and unsatisfied at the date of the sheriff's sale, and being prior in date to appellant's judgment, it was, of course, entitled to be paid in full, in preference to his.

From what has been said, it follows that the fourth specification cannot be sustained.

Decree affirmed, and appeal dismissed at the costs of appellant.